USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: _4/1/2020_____

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

ROBERT GOLDRING,

                   **Plaintiff,**

          **-against-**

ASSISTANT DIRECTOR KIMBERLY
DAVIDSON, DEBORAH WOODS, DEIDRA
SCHEMERHORN, DEBORAH WOLFE,
NOREEN HART, AND JOHN DOE #1-3,

                   **Defendants.**

1:18-CV-06201 (ALC)

**OPINION & ORDER**

**ANDREW L. CARTER, JR., District Judge:**

Plaintiff Robert Goldring brings this action under 42 U.S.C. § 1983 against Defendants Kimberly Davidson, Deborah Woods, Deidra Schermerhorn, Noreen Hart and Deborah Wolfe (collectively, the "Defendants") for alleged violations of his Fourth, Eighth, and Fourteenth Amendment rights in connection with Plaintiff's detention at Downstate Correctional Facility for seventeen days past the expiration of his sentence. For the reasons set forth below, Defendants' motion to dismiss is **GRANTED** in part and **DENIED** in part.

## INTRODUCTION

Plaintiff alleges that Defendants violated his Fourth, Eighth, and Fourteenth Amendment rights by detaining him after the expiration of his sentence and ignoring his pleas for release. Plaintiff has abandoned his Fourth Amendment claims. Plaintiff's Eighth Amendment claims are dismissed because Defendants are entitled to qualified immunity. It was not clearly established at the time of the alleged violation that seventeen days of incarceration past the expiration of a sentence is sufficiently serious to violate the Eighth Amendment. Plaintiff's Fourteenth Amendment claims proceed in two parts: first, challenging the random, unauthorized acts of

Defendants; and second, challenging the state procedure for review of an amended sentence and commitment order. Plaintiff's first claim is dismissed because adequate post-deprivation processes—namely, Article 78 and habeas proceedings—were available to Plaintiff. Plaintiff's second claim, however, cannot be dismissed without further factual development, as Plaintiff has sufficiently pled that the procedures used by Defendants were inadequate. For these reasons, Plaintiff's Fourth and Eighth Amendment claims are dismissed, but Plaintiff's Fourteenth Amendment claims remain.

## BACKGROUND

The following facts are taken from allegations contained in Plaintiff's Complaint and are presumed to be true for purposes of this motion.

Plaintiff was arrested in November 2010 and was convicted of a crime and sentenced to seven years of incarceration. Complaint, ECF No. 1 at ¶15. In November 2015, Plaintiff's sentence was vacated, and he was resentenced to two to four years of incarceration in September 2016. *Id.* at ¶15–16. The sentencing court instructed that Plaintiff be released immediately as he had already served approximately five years prior to his resentencing. *Id.* at ¶15.

Plaintiff was transferred back to Downstate Correctional Facility on September 28, 2016. The amended sentence and commitment order based on Plaintiff's resentencing were part of his inmate file when he arrived at the facility. *Id.* at ¶17. Since Plaintiff was no longer eligible for parole (having served more than four years on his two to four year sentence) and since his term of incarceration had expired, Plaintiff alleges that he should have been released immediately. *Id.* at 19. Plaintiff further alleges that on October 1, 3, 4, and 13, he wrote to the Defendants complaining that he was being held past the expiration of his sentence, but he was ignored. *Id.* at 20. Plaintiff

was finally released on October 14, 2016, seventeen days after his arrival at Downstate Correctional Facility. *Id.* at ¶23.

Plaintiff filed his Complaint on July 9, 2018. ECF No. 1. He alleges that Defendants violated his Fourth, Eighth, and Fourteenth Amendment rights by denying him due process and subjecting him to cruel and unusual punishment when they acted with deliberate indifference and caused Plaintiff's illegal detention. The Parties engaged in settlement talks but were unable to come to an agreement. ECF No. 34. Defendants filed the instant motion to dismiss on March 29, 2019. ECF Nos. 36–37. Plaintiff responded on May 14, 2019. ECF No. 40. Finally, Defendant replied on May 24, 2019. ECF No. 41.

## STANDARD OF REVIEW

### I.    Rule 12(b)(6) Standard

When resolving a motion to dismiss under Fed. R. Civ. P 12(b)(6), a court should "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). Thus, "[t]o survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). However, the court need not credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient."

*Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985). The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Moreover, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Id.* at 663.

"To state a claim under § 1983, a plaintiff must allege that (1) the challenged conduct was attributable at least in part to a person who was acting under color of state law; and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States." *Snider v. Dylag*, 188 F.3d 51, 53 (2d Cir. 1999). A complaint under § 1983 "must contain specific allegations of fact which indicate a deprivation of constitutional rights; allegations which are nothing more than broad, simple, and conclusory statements are insufficient to state a claim under § 1983." *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 887 (2d Cir. 1987).

## II. Qualified Immunity Standard

"Qualified immunity protects public officials from liability for civil damages when one of two conditions is satisfied: (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Russo v. City of Bridgeport*, 479 F.3d 196, 211 (2d Cir. 2007) (internal quotation marks omitted). Because qualified immunity is an affirmative defense, the defendant bears the burden of proof. *Lore v. City of Syracuse*, 670 F.3d 127, 149 (2d Cir. 2012). Whether "qualified immunity applies in a particular case 'generally turns on the objective legal reasonableness' of the challenged action, 'assessed in light of the legal rules that were clearly established at the time it was taken.'" *DiStiso*

*v. Cook*, 691 F.3d 226, 240 (2d Cir. 2012) (quoting *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012)).  An act is "objectively reasonable" if 'officers of reasonable competence could disagree' on the legality of the defendant's actions." *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).  "Only Supreme Court and Second Circuit precedent existing at the time of the alleged violation is relevant in deciding whether a right is clearly established." *Moore v. Vega*, 371 F.3d 110, 114 (2d Cir. 2004).

The Second Circuit has held that "[u]sually, the defense of qualified immunity cannot support the grant of a 12(b)(6) motion for failure to state a claim upon which relief can be granted." *McKenna v. Wright*, 386 F.3d 432, 435 (2d Cir. 2004) (quoting *Green v. Maraio*, 722 F.2d 1013, 1018 (2d Cir.1983)) (emphasis added in *McKenna*).  At the motion to dismiss stage, a plaintiff is "entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense." *McKenna*, 386 F.3d at 436.  However, a court may consider qualified immunity "as long as the defense is based on facts appearing on the face of the complaint." *Benzman v. Whitman*, 523 F.3d 119, 125 (2d Cir. 2008) (quoting *McKenna*, 386 F.3d at 436).

## DISCUSSION

### I.    Fourth Amendment Claim

Although Plaintiff ostensibly brings a Fourth Amendment claim, the Fourth Amendment is mentioned only once in Plaintiff's Complaint in the "Damages" section. *See* Complaint at ¶25. Defendants, in their moving brief, raised the issue that Plaintiff's Fourth Amendment claim must be dismissed because Plaintiff fails to adequately plead this claim. Memorandum of Law in Support of Defendants' Motion to Dismiss ("Defs. Memo"), ECF No. 37 at 13–14.  Plaintiff, however, did not reference the Fourth Amendment at all in his Opposition to Defendants' Motion

to Dismiss. *See Kindler v. City of New York*, No. 17-CV-9896, 2019 WL 4511717, at \*2 (S.D.N.Y. Sept. 19, 2019) ("Because the Court discerns no plausible factual basis for a Fourth Amendment claim in the allegations of the FAC, and because [Plaintiff] advances no argument demonstrating that such a basis exists, his Fourth Amendment claim is dismissed."). In light of the fleeting reference to the Fourth Amendment in Plaintiff's Complaint and Plaintiff's failure to respond to Defendants, the Court deems Plaintiff's Fourth Amendment claim abandoned and dismissed this claim. *See Jackson v. Fed. Exp.*, 766 F.3d 189, 196 (2d Cir. 2014) ("Generally, but perhaps not always, a partial response reflects a decision by a party's attorney to pursue some claims or defenses and to abandon others. Pleadings often are designed to include all possible claims or defenses, and parties are always free to abandon some of them.").

## II. Eighth Amendment Claim

### A. Standard of Review

The Second Circuit and other courts "within and without [the] Circuit have held, that detention beyond that authorized by law may violate the Eighth Amendment." *Sudler v. City of New York*, 689 F.3d 159, 169 n.11 (2d Cir. 2012) (citing *Calhoun v. N.Y. State Div. of Parole Offs.*, 999 F.2d 647, 654 (2d Cir. 1993). "Detention beyond the termination of a sentence can constitute cruel and unusual punishment if it is the result of 'deliberate indifference' to the prisoner's liberty interest." *Wright v. Kane*, No. 94-CV-3836, 1997 WL 746457, at \*4 (S.D.N.Y. Dec. 2, 1997) (citing *Estelle v. Gamble*, 429 U.S. 97, 104–06 (1976)). "To establish an Eighth Amendment violation, an inmate must show: (1) a deprivation that is objectively, sufficiently serious . . . and (2) a sufficiently culpable state of mind on the part of the defendant official, such as deliberate indifference to inmate health or safety." *Jabbar v. Fischer*, 683 F.3d 54, 57 (2d Cir. 2012) (citation and quotation marks omitted).

**B. Application**

Plaintiff's Eighth Amendment claim fails because Defendants are entitled to qualified immunity. It was not clearly established in September–October 2016 (i.e., the time of the alleged Eighth Amendment violation) that continued detention for seventeen days after the expiration of a sentence violates the Eighth Amendment. A delay of a few days beyond the expiration of a sentence does not constitute a "sufficiently serious" deprivation of liberty to give rise to an Eighth Amendment claim. *See Calhoun v. New York State Div. of Parole Officers*, 999 F.2d 647, 654 (2d Cir. 1993) ("In our view, the five-day extension of [Defendant's] release date did not inflict a harm of a magnitude that violates a person's eighth amendment rights.") (citation and quotation marks omitted). In November 2019, the Second Circuit held that "[n]o case establishes that [] four months of additional incarceration, although of serious dimension, crossed the threshold of sufficient objective seriousness to constitute 'cruel and unusual punishment[ ]' under the Eighth Amendment." *Francis v. Fiacco*, 942 F.3d 126, 150 (2d Cir. 2019); *see also Akande v. United States Marshals Serv.*, 659 F. App'x 681, 684 (2d Cir. 2016) (unpublished opinion) (noting that the length of unwarranted detention that violates the Eighth Amendment "is not a settled issue."). It was not "clearly established" at the time of the alleged violation that Plaintiff's unauthorized confinement of seventeen days constitutes a "sufficiently serious" deprivation to give rise to an Eighth Amendment claim. Thus, without deciding whether this confinement violated Plaintiff's Eighth Amendment rights,[1] this Court finds that Defendants are entitled to qualified immunity on Plaintiff's Eighth Amendment claim.

---

[1] The Court pauses to note that courts in this District have found that similar lengths of unauthorized confinement do not violate the Eighth Amendment. *See, e.g.*, *Hayes v. Annucci*, No. 14-CV-8845, 2016 WL 1746109, at *5 (S.D.N.Y. Apr. 29, 2016) ("In the present case, the issue for the Court is whether Plaintiff's incarceration for seventeen days beyond his conditional release date constitutes a sufficient injury to give rise to an Eight Amendment claim . . . . [T]he Court

### III. Fourteenth Amendment Claims

#### A. Standard of Review

Under the Fourteenth Amendment due process clause, "an inmate has a liberty interest in being released upon the expiration of his maximum term of imprisonment." *Calhoun*, 999 F.2d 647, 653 (2d Cir. 1993). "Due process requires, as a general matter, an opportunity to be heard at a meaningful time and in a meaningful way." *Id.* (citation and quotation marks omitted). "A violation of procedural due process may occur when a person is deprived of his liberty for a period of time that would not support an Eighth Amendment claim." *Akande v. U.S. Marshals Serv.*, No. 11-CV-1125, 2018 WL 1383397, at *10 (D. Conn. Mar. 19, 2018). "Federal courts examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Francis*, 942 F.3d at 141 (citing *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)).

"When reviewing alleged procedural due process violations, the Supreme Court has distinguished between (a) claims based on established state procedures and (b) claims based on random, unauthorized acts by state employees." *Hellenic Am. Neighborhood Action Comm. v. City of N.Y.*, 101 F.3d 877, 880 (2d Cir. 1996) (citations omitted). "Under the latter scenario, a deprivation effectuated through the random and unauthorized acts of government officials does not violate procedural due process so long as the government provides a meaningful remedy

---

concludes that his relatively short deprivation is not sufficiently serious to sustain a constitutional violation.") (citations and quotation marks omitted); *Brunson v. Duffy*, 14 F. Supp. 3d 287, 294 (S.D.N.Y. 2014) ("[T]he Complaint would still fail to allege an Eighth Amendment violation given that the Complaint also alleges that Plaintiff was released . . . twenty-one days after he filed the petition."). However, this Court declines to engage in the "[u]nnecessary litigation of constitutional issues" when the "clearly established" prong of the qualified immunity inquiry resolves Plaintiff's claims. *Pearson v. Callahan*, 555 U.S. 223, 237 (2009).

subsequent to deprivation." *Locurto v. Safir*, 264 F.3d 154, 172 (2d Cir. 2001).  However, "[w]hen the deprivation occurs in the more structured environment of established state procedures, rather than random acts, the availability of postdeprivation procedures will not, ipso facto, satisfy due process." *Hellenic Am. Neighborhood Action Comm.*, 101 F.3d at 880 (citations omitted).

## B. Application

Plaintiff had a liberty interest in being released upon his arrival at Downstate Correctional Facility because his maximum term of imprisonment had expired. *See, e.g.*, *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause . . . ."); *see also Calhoun*, 999 F.2d at 653 ("[A]n inmate has a liberty interest in being released upon the expiration of his maximum term of imprisonment."). Plaintiff alleges his due process rights were violated in two ways.  First, in a series of random, unauthorized acts, although Defendants had a duty "to review [Plaintiff's] file upon admission [] they failed to do so." Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Opp. Memo"), ECF No. 40 at 9.  Second, "the deprivation was the result of inadequate procedures in place to review an amended sentence and commitment order . . . ." *Id.*

First, the Court turns to Plaintiff's "random, unauthorized" acts claim.  It is well established that the availability of Article 78 proceedings or state habeas proceedings provides a meaningful post-deprivation remedy sufficient to defeat a due process claim. *See, e.g.*, *Hayes v. Annucci*, No. 14-CV-8845, 2016 WL 1746109, at *4 (S.D.N.Y. Apr. 29, 2016) ("The Second Circuit has held that the availability of an Article 78 proceeding constitutes a meaningful post-deprivation remedy."); *Schultz v. Egan*, 103 Fed. Appx. 437, 441 (2d Cir. 2004) (unpublished opinion) (noting that when "random and unauthorized" acts led to an inmate being detained beyond his maximum release date, "the availability of an Article 78 proceeding or a habeas proceeding would almost

certainly suffice to satisfy the due process clause."); *Peterson v. Tomaselli*, 469 F. Supp. 2d 146, 166 (S.D.N.Y. 2007) ("Plaintiff could have initiated either an Article 78 proceeding or a state habeas proceeding to adjudicate his claim regarding his release date."). In this case, Plaintiff could have initiated either proceeding to challenge his delayed release. As such, Plaintiff has not established that there was no meaningful post-deprivation remedy and his first due process claim is dismissed. *See Hellenic Am. Neighborhood Action Comm.*, 101 F.3d at 882 ("[T]here is no constitutional violation . . . when there is an adequate state post-deprivation procedure to remedy a random, arbitrary deprivation of property or liberty.").[2]

Next, the Court turns to Plaintiff's inadequate procedures claim. Plaintiff alleges that his rights were violated because of "inadequate procedures in place to review an amended sentence and commitment order returning with an inmate that had previously been in DOCCS custody." Opp. Memo at 9. If Defendants were acting pursuant to established state procedures, "the availability of postdeprivation procedures will not, ipso facto, satisfy due process." *Hellenic Am. Neighborhood Action Comm.*, 101 F.3d at 880 (citation omitted). Instead, the Court would have to engage in the three-factor test established by the Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976) to determine what process was due to Plaintiff and whether the state procedures were adequate. *See Francis*, 942 F.3d at 143. Plaintiff alleges that "DOCCS was aware of the vacated sentence when they transferred Mr. Goldring to NYC custody and therefore needed

---

[2] "[T]he 'random and unauthorized' exception to the requirement of a pre-deprivation hearing does not apply when the government actor in question is a high-ranking official with 'final authority over significant matters.'" *DiBlasio v. Novello*, 344 F.3d 292, 302 (2d Cir. 2003) (citations omitted). In this case, Defendants—employees of the DOCCS—are not "high-ranking officials" and their alleged conduct does not "constitute established state procedure." *Burtnieks v. City of New York*, 716 F.2d 982, 988 (2d Cir. 1983). *Cf. Dwyer v. Regan*, 777 F.2d 825, 833 (2d Cir. 1985), *modified*, 793 F.2d 457 (2d Cir. 1986) (declining to apply the "random and unauthorized" exception because Defendant "was not a lower-echelon employee; he was one of the highest ranking officers of the State.").

a proper procedure in place to review his amended sentence when he returned." Opp. Memo. at 9. This claim requires further factual development regarding the state procedures in place at the time of the alleged violation.

The *Mathews v. Eldridge* test is highly fact-bound, and Plaintiff should have an opportunity to develop his factual allegations against Defendants regarding the official policy or custom to review an amended sentence and commitment order. *See Kindler v. City of New York,* No. 17-CV-9896, 2019 WL 4511717, at *4 (S.D.N.Y. Sept. 19, 2019) ("[T]o the extent that [Plaintiff] due process claim challenges the State Defendants' procedure of deferring to DOC paperwork, or State Defendants' failure to provide a process to review or address complaints of miscalculated sentences in the absence of such paperwork, the three-factor test of *Mathews v. Eldridge*, 424 U.S. 319 (1976) must be applied to determine what process was due to [Plaintiff]. *Id.* Because the *Mathews* inquiry is a factual one, dismissal of [Plaintiff's] due process claim at the pleading stage on this basis would be inappropriate."); *see also Schultz,* 103 F. App'x at 441 ("There may well be administrative procedures in place for addressing prisoner complaints about miscalculated sentences that satisfy due process. However, because we are still at the motion to dismiss stage, defendants have submitted no factual information regarding what procedures they use."). Plaintiff has, at this stage, sufficiently alleged that he was incarcerated beyond his maximum sentence, that he informed Defendants of his extended incarceration on four occasions, and that the procedures used by DOCCS when he was returned to Downstate Correctional Facility were inadequate.

## IV. Leave to Amend

Federal Rule of Civil Procedure 15(a)(2) provides that leave to amend a complaint shall be "freely" given when "justice so requires." Fed. R. Civ. P. 15(a)(2). Defendants assert that Plaintiff's Complaint constitutes a "group pleading" that does not differentiate between the

conduct and culpability of the several Defendants. Def. Memo at 4. The Court disagrees. Plaintiff identifies five Defendants, their positions at DOCCS, and their role in the alleged violations. Plaintiff alleges that Defendants Hart and Schemerhorn reviewed and updated Plaintiff's inmate file; and that Defendant Woods reminded Defendant Davidson that Plaintiff's maximum sentence date had expired. Plaintiff's Complaint does not, however, specify Defendant Wolfe's alleged involvement. The Complaint also does not specify which Defendants Plaintiff wrote to on October 1, 3, 4, and 13 or the content of these letters. In light of the Court's "broad discretion in determining whether to grant leave to amend," the Court grants Plaintiff leave to file an amended complaint to address these deficiencies and to provide further detail or evidence supporting his inadequate procedures claim. *See Gurary v. Winehouse*, 235 F.3d 792, 801 (2d Cir. 2000).

## CONCLUSION

For the reasons set forth above, Plaintiff's Fourth and Eighth Amendment claims are hereby **DISMISSED.** Plaintiff's Fourteenth Amendment claims remain and he is hereby **GRANTED** leave to file an amended complaint regarding his Fourteenth Amendment claims within thirty days of the filing of this Opinion.


**SO ORDERED.**

**Dated:**     **April 1, 2020**
              **New York, New York**

_____
    **ANDREW L. CARTER, JR.**
    **United States District Judge**